On behalf of the athlete, Mr. David Bernal. Thank you, Mr. McNeil. You may proceed. Hello, your honors, counsel. May it please the court. My name is Brian McNeil and I represent James Dumas. I am prepared to talk about any of the issues today, but what I want to focus on is the possession element of the offense. Mr. Dumas may have physically touched the cocaine in this case, but the law requires more to sustain his conviction. This case is a fairly unique reverse buy scenario. And that means that unlike the controlled buy situation, the defendant is the one who brings the drugs to the transaction. At some point in a reverse buy, the defendant has to do something to show that he has taken possession of the drugs. And that possession entails more than just physical touching. You need an indication of acceptance or ratification of possession on the part of the defendant. In this particular case, wasn't there a lot of discussion between the defendant and the undercover officer about the sale and the buy and where we're going to meet, etc., etc.? So wouldn't that go to his intent? Well, it suggests that he was, you know, that the two were discussing the possibility of completing a drug transaction. And they obviously made extensive preparations for that. They picked a location and everything. However, at all times, the undercover officer is the one who had control of the drugs. And so at some point, once they met up, Mr. Dumas has to take possession of those drugs in some way if there's going to be possession on his part. And he needs to accept or ratify possession in some way, do something that says, yes, I accept these drugs and I now consider them to be mine. So obviously your position is a momentary inspection of an object is not the legal equivalent of possession. That's correct, Your Honor. Mr. Dumas, he may have held the drugs for 30 to 60 seconds in this case, but he only did so in the context of inspection, not acceptance or actually taking possession in that way. Are you familiar with the case of People v. Thomas? I am, Your Honor. Okay. I think the State is relying heavily on the Thomas case in arguing that your client was in possession of the drugs in question. So how do you distinguish Thomas from the situation in this case? In the Thomas case, the defendant there did everything he could to make the transaction happen. He arrived with the money for the drugs. He had the money shown to the undercover officers. And he did everything he could to show that he was ready, willing, and able to go through with the transaction at all times. The deal was essentially complete when the officers interrupted it to arrest the defendant. And if that weren't enough, at his own trial, the defendant admitted under cross-examination that he had intended to go forward with the purchase and buy the drugs. Now, that's not the case here. We have no deal being made at any time. And not only does Mr. Dumas not accept the drugs in this case, he in fact rejected them. He examined the drugs. He didn't have any money with him, did he? The record indicates that he did not even bring the money to the transaction. And, therefore, to some extent that goes more to the intent issue, but it also shows he lacked even the ability to take control of the drugs or walk away from the transaction with them. And, in fact, after inspecting the drugs, he expressed some doubts about the quality of them by mentioning the reroute process. And he gave them back to the officer. And, therefore, not only did he not accept possession in any way, he actually rejected it, and he stopped the deal from going forward. Let me ask you this candidly. What would, in essence, constitute actual legal possession? I mean, you're saying, granted the evidence is he didn't have any money with him and he didn't do anything with it to ratify the transaction. Do you need those things to be in legal, actual possession of an object? I think in this reverse bias situation, you need something that gives an unequivocal indication of an intent to accept or ratify possession. But because the officer is the one who starts out with possession of these drugs, at some point, Mr. Dumas was convicted of possession. So, obviously, at some point, he has to do something to show that he actually possesses the drugs. And that's what the United States v. Kitchen case from the Seventh Circuit Court of Appeals is very much on point in this situation. Kitchen had money, didn't he? Kitchen also brought money with him to the transaction, further showing that he was prepared to complete the transaction in that case. Now, it's true that Mr. Dumas held the cocaine for a shorter period than the Kitchen defendant, but the key to the Kitchen case is its recognition that, at least in this reverse bias scenario, you need to have the defendant do something that shows unequivocal indication of an intent to walk away from the transaction with the drugs. And we just don't have that here. The trial court found that he had the ability to run away with the drugs, basically, or the ability, as he was holding them, to either pay for them or to take them and run, so to speak. That's correct. And to couch its opinion in that. That was the trial court's explanation of its finding. The court's conception of possession was overly technical, Your Honor. It's true that perhaps Mr. Dumas could have theoretically run away with the drugs during those 30 to 60 seconds, but the Ortega case in the Federal Seventh Circuit Court of Appeals speaks specifically to this notion and explains that the power to make off with or abscond with someone else's property is not the same thing as possession. Now, to the extent that Mr. Dumas could have done these things to indicate that he was taking possession of the drugs, such as completing the transaction, producing the money, these things that the court said, that's kind of our point. Our point is that Mr. Dumas didn't do these things that would normally indicate an unequivocal intent to take possession of the drugs. How would you respond to this? Your opponent could be arguing, you talk about some things. As I understand it, actual possession is defined as the exercise of immediate and exclusive dominion or control over the actor, correct? I believe that's the correct legal standard. That's correct. I mean, many courts have said that that's what it means. That's what actual possession is defined as. So he argues, did Mr. Dumas ever have actual possession? No, Your Honor. How do you argue about those elements of dominion and control? How do they not apply here? Well, first of all, what I've already said regarding acceptance or ratification of possession is necessary. And these cases, such as Kitchen, speak of the related concept of the right or recognized authority to control something as being a necessary prerequisite to possession. Now, that means that, sure, he held it in his hands. And like I said, he could have run away with it or done all these other things theoretically. But it must be understood between the parties to the transaction or the criminal milieu, as they refer to it in these federal cases, that the defendant is the one who has the right to control or take care of the property. He's the one who has the recognized authority to control the disposition of the property. Now, we don't have that here because the undercover officer at all times is unquestionably the one who's in control of these drugs here. He brings them to the transaction, Mr. Dumas inspects them, but rejects them and gives them back to the officer. It cannot be said at any time that Mr. Dumas is the one who has the, quote, right to control the disposition of these drugs in this case. Do you think that your client could have been charged with an attempt on lawful possession? I think that's possible, Your Honor. I think perhaps the State would have been wiser to proceed in that fashion. However, he stands convicted of the completed offense at this point, and therefore you need something to show actual possession. Now, if it had been an attempt, obviously our position is that his conviction should be reversed outright. But if this court is inclined to reduce his conviction to attempt and remain the cause for resentencing, I believe the court has the inherent authority to do so under Rule 615. In this case, Mr. Dumas not only did not accept possession of the drugs, he rejected the cocaine and gave it back to the officer. As such, he never possessed the drugs in any way, as is an necessary element to the conviction for possession of a controlled substance with intent to deliver. And accordingly, if there are no further questions, we ask that this court reverse Mr. Dumas's conviction, or in the alternative, because the intent element is also lacking as explained in the briefs, reduce his conviction to possession of a controlled substance and remain the cause for resentencing. Thank you very much, Your Honor. We don't have time for rebuttal. Mr. Bernhardt. Good afternoon, Your Honors. Thank you. I think, and that's kind of our profession is splitting hairs, but I think in this case, counsel is trying to split hairs. We have someone who had possession. The Thomas case shows that he clearly had possession. Then we show by his statements to the police officer, which were not challenged, that he had an intent to deliver. He told the officer, I need two kilos of cocaine. I'm going to take it for this certain price, and I'm going to sell it to these buyers for $2,000 profit for each kilo. He also told him that, you know, I have these buyers who are going to be regular buyers. I plan on buying from you, and I'm going to sell them to these regular buyers. Now, that's intent. But did he ever complete the transaction? He could, as when he stated, can we go to another place, that completes the transaction. I think the transaction was completed even before then because he showed his intent. Well, how do you distinguish the Kitchen case? Well, because they said there was no unequivocal consent. This guy, even before he came to the drug buy, had consented. He said he was going to buy drugs. He wanted two kilos. Well, did Kitchen say that? Well, they asked for something that was unequivocal consent, and there was no unequivocal consent in Kitchen. Here we have three statements that are unequivocal consent. If you don't even count the first two, you have the one that says, okay, let's complete the deal in another parking lot because I'm nervous. I think we're confusing intent as an element of possession versus the issue of dominion and control. Let's assume everything you said was true. He goes up to the car, and he never physically touches the controlled substance. Could that support a charge of possession just because he's got money? As far as I'm concerned, he'd be waving the money outside the window. He looks in the car. He talks about it. Let's go here. Could conviction for possession be upheld under those circumstances if the defendant never touches the substance? I don't want to. I think it would be hard to prove. I think money is almost a straw man in this issue because he told the officer he didn't have any money, but we don't know that for sure. He could have had the money in the trunk, but he said he was coming with the money. At first he had the money, and then he got nervous because people were watching in the parking lot. Well, he could have said, I don't have the money, so I don't think that's – he could have run away with the drugs, stolen the drugs from the police officer, so I don't think money has anything to do with it. I think money is a red herring. You can have possession in the circumstance, legal possession, actual possession, even if you didn't have any money. But isn't there a difference between momentarily inspecting an object and having legal possession? That involves dominion and control. For example, if you go into a store and you take a radio off the shelf, and you're playing with the radio and you're moving it out and you're walking around inspecting this, are you in legal possession of the radio at that point? No. Right. Right. So how do we distinguish that from Mr. Gould? This is a criminal enterprise. There's also a factor of police protection. So we could have consummated that deal if that police officer had decided to go to the other location, but do we put him at risk? Because he didn't – that's why he cut off following this guy, because he didn't want to be put at risk. This guy could have come up. He could have had his friends there with guns. His life could have been in danger. Those are legitimate concerns. I think that's a different issue. But that doesn't weigh any issue of possession. We have to remember what is possession defined as. All of these other things are on the periphery. I think you've acknowledged that if he never touched the drugs, it would be a hard case to prove of possession. But the thing is, is he did touch the drugs. He examined the drugs. He had them for at least 30 to 60 seconds. Thomas said 15 seconds. That's enough. He had the drugs and he also had the intent to deliver simultaneously. And then he – I don't think you even have to complete the transaction. I don't know if you have to complete the transaction. No, no, no. But you're hung up on Thomas. I think you can make an argument that Thomas is fairly distinguishable because in Thomas, the defendant, Thomas, was convicted on an accountability fee. Right. Correct? Correct. But the initial – there was no – But he never challenged the evidence of possession of somebody else. So I think you can make an argument. That's distinguishable because in Thomas, the defendant himself didn't legally possess the drugs. Well, I guess I would – I should say actually possessed the drugs. Right. I guess I would disagree with you on it. But it's – there's also these federal cases, which, of course, you don't have to follow. They talk about unequivocal consent. When you have possession, it's already – we know his intent is to buy these kilos of cocaine. But when you have that, that shows possession. Well, what's the difference, though, between inspection and possession? How would you distinguish between an inspection and possession? They're not the same thing, are they? Correct. But that's what I'm saying. We have the intent, why he was expecting it. And when he made the statement, said, okay, I'm getting nervous here, let's go consummate this deal. Let's finish this deal somewhere else. Follow me. That shows me that he had possession. He wanted this cocaine. He owned it. But he never took part of it, though, did he? He never – if he took the substance out of the car and was going somewhere with it, I think clearly that would be possession, actual possession of dominion and control. Doesn't Kitchin say that the intent to possess does not establish the element of dominion and control? So just because you intend to possess it doesn't mean that you – Well, no, because there was no unequivocal comment that he intended to possess it. Why didn't you charge him with attempt? Why wasn't he charged with attempt? That I don't know. If he were charged with attempt, do you think that we have sufficient elements for attempt? Well, I think we have sufficient elements for intent, but we certainly have sufficient elements for possession. He had possession. Now, if your honors are going to be – if we become so technical that now our officers have to go follow through and get this deal completely consummated, I think as a public policy reason, we're putting our officers in jeopardy. And I don't think Illinois law has ever required that. What would it take for the officer – officers do it every day. They complete a transaction. They give a guy the dope and he gives them the money. In this particular case, the guy didn't buy. So – I'm sorry. In this particular case, the guy didn't buy. He didn't give them the money. He said, I don't have the money. You know, if you follow me, I'll give you the money. It may have been a ruse. He may have had the guy following him and he might have had a bunch of thugs down the street crack him over the head and steal the pot or steal the drugs. We don't know what he was going to do at that point. That's speculation. So the transaction was never completed, but more importantly, there was never a possession of that – of those drugs, was there? Yes. How so? When he looked at them, inspected them, and then said, okay, let's finish the deal somewhere else. I think that's a reasonable inference. For a trier of fact to make a reasonable inference when somebody says, inspects it, spends a minute looking at it, and then says, you know, okay, let's do this, but these guys are making me nervous. Let's go to another place. If that's not a reasonable inference that this guy has possession and an intent to deliver – Let me give you this example. You have a police officer who's undercover, he's on a computer, and he is communicating with an individual, a pedophile if you will, who thinks this officer is a 15-year-old girl. The officer says, meet me here. And the guy comes and he meets the officer there. Is he charged with aggravated criminal sexual assault or sexual assault, or is he charged with an attempt sexual assault? Well, in that case, I would venture to say attempt because he hasn't actually assaulted. Right. But he says to who he thought was the little girl on the other end, I'm going to do this to you, I'm going to do that to you. He's telling her what he's going to do just like you're saying. He's on the phone. He's saying, I'm going to take those drugs and I'm going to sell them and I'm going to make an extra $2,000. Is that not the same thing? It's not the same thing. This is a criminal enterprise where a police officer is in danger. So when a police officer is in danger, then we have to ignore the elements of the offense and we have to just look to the process. No, I think you make a reasonable inference on the element of the offense. It wasn't like he looked at it and said, yeah, I don't like these drugs. Didn't he say he was concerned about all those packages? Well, right. And I think they always say that to get some, you know, is this good drugs or not? They say that in pretty much every case I've read that they have some doubt about it, but then they wait to hear what the seller says about it. If you can't make the reasonable inference that somebody who has said at first I'll bring the money has taken several steps to get there. There were several phone calls between the preliminary steps. Can't be confused with the possession. I disagree, Your Honor. I think that's just a physical act. It's not an it's also a matter of intent. Right. Which makes a criminal without the physical act. As I said, I think you conceded if he showed up there with the car, looked in the window. We had the money, but never actually touched the drugs. I think you can see that'd be a tough sell for possession. Well, right. But we're not arguing that. We're arguing he did. He inspected the drugs. And at that time, he had intent to deliver. And when he stated after he inspected the drugs, let's go to another place to finish this by. I think that's a reasonable inference. I think the trier fact has a right to make that reasonable inference. And I think it's a public policy matter to protect police officers that they should be allowed to do that. The public policy argument drug deals fall through all the time for a various number of reasons. This drug deal, this officer didn't have to complete the drug deal. And I think the officer acted completely reasonably. And nobody in this court would say that the officer should drive with some drug dealer somewhere and put his life in danger. I mean, that's just it's not the public policy argument is divorced from what we're talking about here. I mean, what we're talking about here is did a crime was a crime committed in that parking lot when this individual held these drugs. You know, we're not saying that, you know, in order for, you know, if the officer had gone and delivered the drugs down the road, he would have been putting his life in danger and he would have got a dead man conviction for possession with intent. Drug deals fall through all the time. Nobody's saying that these officers have to do this or don't have to do that. The issue is it's not one of public policy. It's one of possession. When this person is holding those drugs of that type, was he in possession under the law, you know, at a reverse bias situation? Correct. Now, kitchen seems to go one way. Thomas seems to go the other way, although the statement in Thomas is certainly victor because nobody challenged that issue. Correct. Do you have any other cases from Illinois? I mean, we've been doing reverse bias in Illinois for ages. Right. Possession of reverse bias in Illinois. Nothing that I could find. No, I couldn't find anything else. That's why, you know, I felt Thomas. You know, I guess what I understand is criminal. The criminal thing is you have to have intent. I think as soon as this defendant took possession, looked at it and said it was OK and made that statement, I know you have to have criminal intent. Well, he possessed it with a criminal intent to deliver it. Maybe we're splitting hairs here, but criminal intent and assent are two different things. I mean, kitchen directly addresses what you're talking about now. That is, does intent equal possession? And kitchen clearly says it doesn't. And they said because it was finished. But kitchen does say that if you show an assent to complete the transaction, there's some unequivocal outward manifestation. Certainly giving the money, that would have been it. Or saying I love these, I'll take them, that would have been it. And part of your argument is that this individual actually did that and said let's go there, we'll do the deal down the block. How do you handle the comment, though, that he said that before he did the deal, he had to have his friend look at the stuff? You know, did he say I've got to go show my friend this stuff to see if they want to buy it or see if they like it? He had called somebody, I think. Didn't he make a call after? Didn't he make a call? I'm sorry. I didn't say he had to go show it to them. My understanding is that he made a call after he looked at the drugs and then said okay, let's go. No, I think he was nervous about the guy he was with. Yeah, I know he was nervous about that. But now, because I've read a lot of cases, it's confusing. But, you know, I don't want to steer you one way or the other. I ask you this question. Is it your position, at what point was possession, legal possession established? As soon as it was handed to him, is it your position that that immediately constituted legal possession? Correct. The moment he touched the substance. Right. Well, yes, that's my position. It has to be your position. But that's my first position. But my second position is if you reject that, certainly after he said let's go someplace else and get this deal done, that shows unequivocal consent, which differentiates it from kitchen. No, didn't kitchen, they went to a different location too. There were like two different places in the apartment block. But this person never said I went to drug stores. None of this, anything in kitchen that talked about, you know, setting up the buy is intent. Oh, no. We had several telephone conversations in kitchen. Griffin and kitchen had several discussions over a three-month period concerning the transaction. The transaction, but not the deal, the intent to deliver. You know, I understand what you're saying about kitchen. Again, they're analyzing a different statute, similar, but it's different. They become very technical on a possession charge. But I think how do you show possession? If a person is telling you he has this intent and then he takes possession and inspects it and then makes another move saying, okay, let's consummate this deal, to me, I don't see why a trier of fact would not say, this guy, he had possession and he intends on delivering it. You know, do we have to wait until he actually has possession, then we pick him up when he's delivering it to the buyer? Same with the individual who talks to the police officer when he thinks he's 15 years old. Do we have to wait for him to go and find a 15-year-old? Yeah, we do. That's why they charge with intent. And all I can say is I just think it's a different situation. I don't think it's analogous. And you did not, in your brief, seek any alternative for us to reduce this other 615b-3 to an attempted theft? No. Thank you. Any other questions? No. Thank you, Counselor. Thank you. Mr. McNeil, rebuttal item, please. Just briefly, Your Honor. I think the Kitchen case is nearly identical with the facts of this case. It's very persuasive because it explains the necessity to find this unequivocal indication of an intent to complete the transaction or take possession of the drugs. Now, Counsel has referred to all sorts of actions that occurred before the transaction occurred, before the parties met at the parking lot that day. Those really never established possession. Obviously, those are preliminary negotiations that put the transaction potentially in motion but never show actual possession. And because Mr. Dumas stands convicted of the completed offense in this case, if that conviction is going to stand, we need to have possession occurring at some point. Did he not show a sense to complete the transaction, unequivocal a sense to complete the transaction that seems to be okay under Kitchen or enough under Kitchen when he said, let's go to wherever they were going, the east side of town or something, to complete the transaction? The undercover officer did bring up the possibility of going to a second location to complete this deal. But importantly, this happened after Mr. Dumas had already examined the cocaine, evidently found its quality wanting by mentioning the REROC process, and returned it to the officer, thus rejecting the transaction at that point. Now, it's possible that if they had gone to the second location, maybe they would have reached some sort of deal at some point. But at this point, it's completely speculative. For all we know, they would never have reached a deal on this. We know that these were contentious negotiations from the beginning. We know that Mr. Dumas apparently had some sort of problem with the quality. It would be pure speculation to conclude that at some point, Mr. Dumas would have actually taken possession of these drugs. Now, Kitchen does speak in terms of an unequivocal indication of an intent to take control or possess the drugs. This is not an unequivocal indication. Even if you agree with the State that Mr. Dumas was interested in exploring the possibility of repairing to a second location and, you know, having further negotiations, that's not unequivocal. That's at most a possibility of discussing the matter further at a second location. That's not the kind of unequivocal indication of acceptance or ratification that is required under the Kitchen line of authority. And it's also telling that even without regard to any of this, it is the officer who has the drugs under his control at all times. Kitchen, Manzala, Ortega, and those other federal cases speak of the related concept of the right or recognized authority to control. It cannot be said at any time in this entire proceeding that Mr. Dumas was the one who had the right to control the drugs. Accordingly, if there are no further questions, we ask that this Court reverse Mr. Dumas's conviction. Thank you very much, Your Honor. Thank you. All right. The case will be taken under advisement of the Commissioner with an opinion read in due course. And we are adjourned.